## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

HECTOR HUGO ALVARADO          )
MONTOYA,                      )
                             )
      Petitioner,           )
                             )
v.                            )     Case No. CIV-25-01231-JD
                             )
RUSSELL HOLT, et al.,         )
                             )
      Respondents.          )

### <u>ORDER</u>

*"[W]e have not traveled, in our search for the meaning of
the lawmakers, beyond the borders of the statute."*

*United States v. Great Northern Ry.*,
287 U.S. 144, 154 (1932) (Cardozo, J.)

Courts across the country are seeking to determine on federal habeas review under

28 U.S.C. § 2241 whether an alien who is pending removal proceedings is entitled to a

bond hearing.[1] Hector Hugo Alvarado Montoya's ("Petitioner") § 2241 Petition for Writ

of Habeas Corpus presents that question to the Court ("Petition"). [Doc. No. 1].

Respondents United States Attorney General Pamela Bondi, United States Secretary of

the Department of Homeland Security Kristi Noem, and United States Immigration and

Customs Enforcement Field Office Director Russell Holt (together "Government") filed a

---

[1] The Court uses "alien" in this order, as that is the word used to describe someone of Petitioner's status in the applicable statutes. *See* 8 U.S.C. § 1101(a)(3) ("The term 'alien' means any person not a citizen or national of the United States."). Congress wrote these statutes many years ago. *See infra* n.5. And while the Court understands some modern case law uses "noncitizen" instead of "alien," because this is a case of statutory construction, the Court uses Congress's language.

Response in Opposition to the Petition for Writ of Habeas Corpus. [Doc. No. 9]. The Court referred the matter to United States Magistrate Judge Chris Stephens, who entered a Report and Recommendation. ("R. & R.") [Doc. No. 11]. The Government filed objections, [Doc. No. 12], and Petitioner responded to the Government's objections, [Doc. No. 14].

The Court begins with the relevant statutory text. The opening provision of 8 U.S.C. § 1225(a)(1) states that "[a]n alien present in the United States who has not been admitted or who arrives in the United States . . . shall be deemed for purposes of this chapter an applicant for admission." Section 1225(b)(2)(A) then provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained" for removal proceedings, without bond. 8 U.S.C. § 1225(b)(2)(A). By contrast, § 1226(a) authorizes detention of any "alien" "[o]n a warrant issued by the Attorney General" and permits release on bond pending removal. *Id.* § 1226(a).

While most courts agree that district courts have jurisdiction under § 2241 to resolve the issue, courts have taken diverging paths in statutory interpretation in answering the bond hearing question.[2] The Supreme Court and United States Court of

---

[2] The Court is aware that multiple courts of appeals are currently examining the issue, as of the filing of this order. *See, e.g., Lopez-Campos v. Raycraft, et al.*, No. 25-1965 (6th Cir.) (filed Oct. 27, 2025); *Buenrostro-Mendez v. Bondi, et al.*, Consolidated Appeal, Lead Case No. 25-20496 (5th Cir.) (filed Nov. 3, 2025); *Lopez v. Noem, et al.*, Case No. 25-3266 (8th Cir.) (filed Nov. 13, 2025); *Rivera v. Holt, et al.*, No. 25-7050 (4th Cir.) (filed Dec. 17, 2025). Although new orders are being issued daily, the Court's most

Appeals for the Tenth Circuit have not spoken; thus, this Court has no binding precedent to apply in answering the question about whether Petitioner is entitled to a bond hearing.

The majority of district courts have granted bond hearings, reasoning that § 1225(b)(2)(A)'s use of "applicant for admission" alongside "alien seeking admission" means that mandatory detention applies only to the subset who are presently "seeking admission"—that is, those actively arriving. Those courts bolster that conclusion by pointing to potential surplusage issues created in § 1226(c)(1). Under this construction, the statutory scheme present in 8 U.S.C. §§ 1225 and 1226 creates an implied third category of immigrants: Unadmitted aliens who are not seeking admission.

In contrast, a minority of courts have reached the opposite conclusion. Under their view, § 1225(a)(1)'s definition of "applicant for admission" unambiguously encompasses all aliens "present in the United States who ha[ve] not been admitted"—without temporal or geographic limitation.

---

recent research indicates that only the Seventh Circuit has examined the interplay between §§ 1225 and 1226, with the remaining orders being from district courts. *See Castanon-Nava v. U.S. Dep't of Homeland Sec.*, No. 25-3050, 2025 WL 3552514, at *8–10 (7th Cir. Dec. 11, 2025) (in a request over a stay pending appeal relating to a 2022 consent decree, stating the arguments over §§ 1225 and 1226 were waived by the consent decree but also "likely to fail on the merits too" and then proceeding to examine in dicta). District court orders, while they may be persuasive, do not create any binding precedent. *Cf. Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.") (quoting 18 *Moore's Federal Practice* § 134.02[1][d] (3d ed. 2011)). The Court considered the Seventh Circuit's dicta in *Castanon-Nava*, which follows the R. & R.'s analysis in terms of "applicant for admission" and "seeking admission." Ultimately, for the reasons explained, and absent binding authority for this Court to follow, the Court does not follow that analysis.

Judge Stephens produced a well-drafted R. & R. reflecting the reasoning adopted by most federal district courts addressing these emerging statutory questions. The Court adopts the portion of the R. & R. finding that the Court has jurisdiction. But the Court takes a different path on the statutory questions and respectfully rejects the portion of the R. & R. holding that Petitioner is detained under 8 U.S.C. § 1226 rather than § 1225.[3]

Section 1225 of title 8 of the United States Code contemplates only (1) aliens who have been lawfully admitted and (2) aliens who are applicants for admission. The statute does not create a third "non-seeking applicant" category, and the "applicant for admission" category explicitly includes both arriving and present unadmitted aliens. The statute gives no temporal or geographic limitations on the status of being an applicant for admission. And the statute itself unambiguously shows that all applicants for admission are seeking admission.

Moreover, there are prudential reasons to hesitate at the path embraced by most courts thus far. Creating an undefined "non-seeking applicant" immigration category presages further judicial gloss. How does a court determine when an unadmitted alien is no longer an "applicant for admission" or "seeking admission?" Is two years of unadmitted residence long enough? Three? How far must an alien travel from the border? 50 miles? 100? If an alien has been in the interior a short time but resides far away from the border, can the distance make up for a short duration? Or, if an alien lives close to the

---

[3] The Court's first duty is to the rule of law, and to misplace that duty would undermine our system of ordered liberty. The Court takes no solace in the human realities on the other end of its pen.

border but resides in the country for decades, can the time period make up for the short distance?

These important questions sound in the province of an elected Congress rather than an unelected judge. This Court limits itself to the plain meaning of the law, which results in the denial of the Petition.

## I.    FACTUAL BACKGROUND

Petitioner is a Mexican citizen who entered the United States without inspection in approximately 2005 and has resided continuously in the country for twenty years. [Doc. No. 1 ¶¶ 15, 40]. United States Immigration and Customs Enforcement ("ICE") detained Petitioner at some point between September 12, 2025, [Doc. No. 9 at 13],[4] and early October 2025, [Doc. No. 1 ¶¶ 15, 41]. Petitioner is charged as inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) for entering without inspection. [Doc. No. 1 ¶ 42].

Following his arrest, ICE issued a custody determination continuing Petitioner's detention without bond. [Doc. No. 1 ¶ 44]. On October 1, 2025, the Immigration Judge denied Petitioner's bond request, holding that she lacked jurisdiction to consider the bond due to the Board of Immigration Appeals' decision in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). [Doc. No. 1 ¶ 45]; [Doc. No. 11 at 3] (citing Doc. No. 1-2).

---

[4] The Court uses page numbering from the CM/ECF stamp across the top of the district court docket.

Petitioner remains detained at the Cimarron Correctional Facility in Cushing, Oklahoma. [Doc. No. 1 ¶ 41].

Thus, Petitioner filed his Petition in this Court, challenging the lawfulness of his detention without a bond hearing and asserting statutory and due process violation claims. Petitioner seeks release or, alternatively, a bond hearing to determine whether he presents a flight risk or danger to the community. [Doc. No. 1 at 13–14].

## II.    LEGAL STANDARDS

### A.    Reports and Recommendations

When a magistrate judge issues a report and recommendation on a dispositive motion, the district judge "shall make a de novo determination of those portions of the report . . . to which objection is made." 28 U.S.C. § 636(b)(1). "[A] party may serve and file specific written objections to the proposed findings and recommendations" within fourteen days after being served with a copy of the magistrate judge's report. Fed. R. Civ. P. 72(b)(2). The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1). That the district judge performs a "de novo determination" does not mandate additional or repeat evidentiary hearings. *United States v. Raddatz*, 447 U.S. 667, 674 (1980).

### B.    Writs of Habeas Corpus

The writ of habeas corpus is available to those held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). And § 2241(c)(3) generally gives district courts jurisdiction over challenges to the legality of

an alien's detention. *Rasul v. Bush*, 542 U.S. 466, 483 (2004); *see also Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) ("Challenges to immigration detention are properly brought directly through habeas.").

III.    **<u>ANALYSIS</u>**

The Court first examines whether 8 U.S.C. § 1252 bars this Court's jurisdiction. Although the Government objected to the R. & R.'s conclusion that the Court has jurisdiction to review Petitioner's § 2241 Petition, the Court agrees with the R. & R. that it has jurisdiction.

The Court next analyzes whether the Government may detain Petitioner under the mandatory detention provisions of 8 U.S.C. § 1225(b)(2)(A) or must instead proceed under the bond-eligible framework of 8 U.S.C. § 1226(a).[5] Here, the Court interprets the language of the statutes and explains why the canons of construction counsel a different conclusion than that reached by the R. & R.

The Court then turns to whether Petitioner's detention violates the Due Process Clause of the Fifth Amendment. Although the R. & R. did not reach this issue because of its analysis on statutory interpretation, the Court reaches this issue raised in the Petition and rejects this claim.

---

[5] These statutes, part of the Immigration and Nationality Act ("INA"), took most of their current form in 1996 with Congress's passage of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009 (1996).

A.    **The Court has jurisdiction to decide Petitioner's § 2241 Petition.**

Petitioner argues the Court has jurisdiction under the plain language of 28 U.S.C.

§ 2241(c)(3) and because Petitioner is being held in a locale within the bounds of this

district. [Doc. No. 1 ¶¶ 8–10]; *see also* 28 U.S.C. § 2241(a) ("Writs of habeas corpus may

be granted by the Supreme Court, any justice thereof, the district courts and any circuit

judge within their respective jurisdictions."). The Government argues the Court lacks

jurisdiction via the jurisdiction stripping and channeling provisions of 8 U.S.C.

§ 1252(a)(5), (b)(9), and (g). The R. & R. found jurisdiction, and the Government timely

objected.

The Government contends that the following provisions from 8 U.S.C. § 1252

channel the Petition to the court of appeals:

> Notwithstanding any other provision of law . . . including section 2241 of
> Title 28, or any other habeas corpus provision . . . a petition for review filed
> with an appropriate court of appeals in accordance with this section shall be
> the sole and exclusive means for judicial review of an order of removal
> entered or issued under any provision of this chapter.

8 U.S.C. § 1252(a)(5).

> Judicial review of all questions of law and fact . . . arising from any action
> taken or proceeding brought to remove an alien . . . shall be available only
> in judicial review of a final order [of removal] under this section. . . . [N]o
> court shall have jurisdiction, by habeas corpus under section 2241 of Title
> 28 . . . to review such an order or such questions of law or fact.

*Id.* § 1252(b)(9).

The Government also contends that § 1252(g) completely strips the Court of

jurisdiction. That provision reads in relevant part as follows:

8

notwithstanding . . . section 2241 of Title 28, or any other habeas corpus provision . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien . . . .

*Id.* § 1252(g).

The Government argues the jurisdiction channeling provisions apply because "[t]he decision to charge and detain Petitioner under § 1225(b)(2)(A) is integral to his removal proceedings" and that it is "a question of law that can be reviewed by the appropriate court of appeals as part of an appeal of a final order of removal." [Doc. No. 9 at 15]. The Government also argues the jurisdiction stripping provision applies because Petitioner "expressly challenges the statutory basis of the proceedings against him," which goes to the Department of Homeland Security's ("DHS") "election" "to commence proceedings" under § 1225(b)(2)(A) rather than § 1226. *Id.* at 16.

The R. & R. found the jurisdiction channeling provisions inapplicable, reasoning that detention orders "are 'separate and apart from orders of removal'" and that "[c]hallenges to [such] orders 'are legal in nature and challenge specific conduct unrelated to removal proceedings.'" [Doc. No. 11 at 5] (first quoting *Hasan v. Crawford*, No. 1:25-cv-1408 (LMB/IDD), 2025 WL 2682255, at *4 (E.D. Va. Sept. 19, 2025); then quoting *Garcia Cortes v. Noem*, No. 1:25-cv-02677-CNS, 2025 WL 2652880, at *2 (D. Colo. Sept. 16, 2025)). Drawing on the Supreme Court's analysis in *Jennings v. Rodriguez*, 583 U.S. 281, 294–95 (2018), the R. & R. concluded that § 1252(b)(9) does not present a jurisdictional bar where, as here, "Petitioner does not challenge any removal order because no order of removal has yet been entered against him," and instead

9

"challenges the constitutionality and legality of his detention during the period before his removal hearing." *Id.* at 5–6 (quoting *S.D.B.B. v. Johnson*, No. 1:25-cv-882, 2025 WL 2845170, at *3 (M.D.N.C. Oct. 7, 2025)).

Regarding the jurisdiction stripping provision of § 1252(g), the R. & R. pointed to the Supreme Court's reasoning in *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471 (1999). *Id.* at 7. In *Reno*, "the Supreme Court explained that § 1252(g)'s jurisdictional bar applies only to 'three discrete actions'—the commencement of removal proceedings, adjudication of removal proceedings, and execution of removal orders." *Id.* (quoting *Reno*, 525 U.S. at 482). And "[t]he Supreme Court found it 'implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings.'" *Id.* (quoting *Reno*, 525 U.S. at 482).

Indeed, the Supreme Court in *Jennings* held that § 1252(b)(9) was inapplicable because the petitioners in that case were not "asking for review of an order of removal; . . . challenging the decision to detain them in the first place or to seek removal; . . . [or] challenging any part of the process by which their removability will be determined." 583 U.S. at 294. *Jennings* invoked *Reno*'s reasoning on § 1252(g) in the *Jennings* Court's own treatment of § 1252(b)(9), stating that with "capacious phrases like 'arising from,'" the Supreme Court has "eschewed 'uncritical literalism'" allowing for an expansive reading beyond the discrete actions laid out in the statute. 583 U.S. at 293–94 (quoting *Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 319 (2016)). This narrow construction must apply here as well. That Petitioner is not challenging the detention

itself is evident by his averment that his detention falls under § 1226(a) rather than § 1225(b)(2)(A). Both statutes contemplate detention during removal proceedings; the key difference is that the former affords a bond hearing while the latter does not.

The Government's citation to an Eleventh Circuit case applying § 1252(g) to a *Bivens* claim does not change the outcome. [Doc. No. 9 at 15] (citing *Alvarez v. U.S. Immigr. & Customs Enf't*, 818 F.3d 1194, 1203 (11th Cir. 2016)); *see also* [Doc. No. 12 at 4–5] (same). While the Eleventh Circuit in *Alvarez* held that § 1252(g) "prevents [courts] from considering whether the agency should have used a different statutory procedure to initiate the removal process," that argument cannot collapse the distinction between a challenge to detention without bond and a challenge to an agency's choice to commence removal proceedings. 818 F.3d at 1203. This is especially so where the Supreme Court has counseled against precisely that kind of "'uncritical literalism'" applied to the "capacious" phrase "arising from." *Jennings*, 583 U.S. at 293–94 (quoting *Gobeille*, 577 U.S. at 319). A challenge to a manner of detention based on statutory construction cannot be transformed into a challenge to an agency's decision to commence proceedings.

Considering the Supreme Court's consistent use of an exceedingly narrow construction on the jurisdiction channeling provisions, and that this Court is bound to follow Supreme Court precedent as it exists and should not expand the analysis where the

11

Court itself has not done so,[6] the Court agrees with the R. & R. that those provisions do not block the Court's jurisdiction. The Court accepts the R. & R. to this extent.

**B.     Petitioner is properly detained under 8 U.S.C. § 1225(b)(2)(A).**

The statutory question boils down to whether Petitioner may be held under the mandatory detention provisions of 8 U.S.C. § 1225(b)(2)(A), or if he instead must be detained under 8 U.S.C. § 1226(a), under which he would be entitled to a bond hearing. The Court proceeds to examine (1) whether Petitioner is an applicant for admission, (2) whether Petitioner is seeking admission, and (3) whether statutory overlap between § 1225(b)(2)(A) and § 1226(c)(1)(E) counsels a different interpretation.

### 1.     *Petitioner is an applicant for admission.*

Petitioner argues that he is not an "applicant for admission" at all, much less one "seeking admission." [Doc. No. 1 ¶¶ 5, 39, 48]. The Government, in contrast, contends that Petitioner "is plainly an 'applicant for admission'" under § 1225(a)(1) because he is an "alien present in the United States who has not been admitted." [Doc. No. 9 at 17].

Section 1225(a)(1) states:

> An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission.

---

[6] Courts must "leav[e] to th[e] [Supreme] Court the prerogative of overruling its own decisions." *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989).

The R. & R. agreed with Petitioner, remarking that "[t]he statutory text does not provide a definitive answer as to what it means to be present without admittance where, as here, the [alien] has already entered and spent many years residing in the United States." [Doc. No. 11 at 11]. The R. & R. stated that "the terms 'applicant for admission' and 'seeking admission' in § 1225(b)(2) do not cleanly apply to [aliens] like Petitioner." *Id.* at 14. The R. & R. reasoned that § 1225's titular reference to "arriving" aliens "indicates that the statute governs the entrance of [aliens] to the United States." *Id.* at 12. The R. & R. concluded that § 1225's "place in the overall statutory scheme" compared to § 1226's broader sweep means that "Congress enacted § 1225 for a specific, limited purpose" of addressing arriving aliens alone. *Id.* at 13. On this, the Court respectfully disagrees with its colleague.

Instead, the Court starts with the "fundamental principle of statutory interpretation," *Rotkiske v. Klemm*, 589 U.S. 8, 14 (2019), that courts "ordinarily resist reading words or elements into a statute that do not appear on its face," *Bates v. United States*, 522 U.S. 23, 29 (1997). "Atextual judicial supplementation is particularly inappropriate when . . . Congress has shown that it knows how to adopt the omitted language or provision." *Rotkiske*, 589 U.S. at 14.

The R. & R.'s conclusion that, based on the statute's title, "Congress enacted § 1225 for a specific, limited purpose" focused on "arriving" aliens necessarily places a temporal or geographic limitation on the statute. [Doc. No. 11 at 13]. But here, Congress omitted from § 1225(a)(1) any such geographic or temporal limitations on a "present" unadmitted alien's state of being an "applicant for admission." That omission is

significant because Congress *did* include a specific residency time parameter elsewhere in the statute—one pertaining to asylum claims and expedited removal proceedings. 8 U.S.C. § 1225(b)(1)(A)(iii). "It is not [this Court's] role to second-guess Congress' decision" to intentionally omit such words of limitation from § 1225(a)(1). *Rotkiske*, 589 U.S. at 14.

Further, the R. & R.'s recitation of § 1225's title does not "reinforce[] what the text's nouns and verbs independently suggest," [Doc. No. 11 at 12] (quoting *Dubin v. United States*, 599 U.S. 110, 121 (2023)), because the text's opening definition specifically lists "present" and "arriving" unadmitted aliens, "deem[ing]" both "applicant[s] for admission." 8 U.S.C. § 1225(a)(1).

The Government also correctly points out that the R. & R.'s focus on § 1225's title is misplaced. [Doc. No. 12 at 7–8]. First, titles of laws "cannot substitute for the operative text of the statute." *Id.* at 7 (quoting *Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 47 (2008)). Second, by focusing on the middle part of § 1225's title regarding "expedited removal of inadmissible arriving aliens," the R. & R. fails to appreciate the remainder of the title. The latter portion of the title reads "referral for hearing," which relates to aliens subject to "full removal proceedings," like Petitioner. *Id.* at 8. Aliens subject to expedited removal do not receive *any* hearing, while unadmitted aliens subject to § 1225(b)(2)(A) receive a removal hearing under § 1229a, though not a bond hearing. Ultimately, whatever the statute's title says about its meaning cuts toward the Government's interpretation, not the Petitioner's.

Lastly, the R. & R. pointed to § 1225(b)(2)'s subheading title, which reads "Inspection of other aliens," [Doc. No. 11 at 12], as well as § 1225(d)'s enumeration of inspection powers related to port of entry inspection, *id.* at 12–13. But the subheading title "Inspection of other aliens" does not "reinforc[e] the idea that the subsection applies to those coming in, not already present." *Id.* at 12. Section 1225(d)'s listing of port-specific inspection powers is unsurprising considering ports are where most inspections presumably take place. *Id.* at 12–13. Nothing in the language of § 1225 limits its operation to only those applicants for admission who are arriving.

In sum, Petitioner is an applicant for admission under the plain language of § 1225(a)(1) because he is present in the United States and charged with being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) as someone who entered the United States without inspection. [Doc. No. 1 ¶ 42; Doc. No. 9 at 13; Doc. No. 11 at 2]. The next question is whether Petitioner is an "applicant for admission" who is also "seeking admission."

### 2. *Applicants for admission are seeking admission.*

On this issue, the R. & R. applied legitimate structural canons of construction, but it applied those canons to address ambiguities that, on a careful reading, resolve on their own terms. Before invoking structural canons of interpretation to draw inferences from parallel statutes, a court should first determine whether the statutory text itself adequately explains the relationship between the contested terms. *See United States v. Rentz*, 777 F.3d 1105, 1110 (10th Cir. 2015) (contrasting a preferred "reading of the statute" that

"like most good [readings][,] flows from plain . . . grammar" with a disfavored reading that "requires some sophisticated syntactical somersaults").

        a)  Section 1225(a)(3) creates a logical category relationship between the phrases.

Here, § 1225(a)(3) explains how the contested phrases relate. Specifically, "applicants for admission or otherwise seeking admission" creates a formal logical relationship between the two concepts. 8 U.S.C. § 1225(a)(3).

The Government correctly points to § 1225(a)(3), which requires inspection of "[a]ll aliens . . . who are applicants for admission or otherwise seeking admission." [Doc. No. 9 at 20]. The Government quotes *United States v. Woods*, 571 U.S. 31, 45 (2013), to argue that the word "or" in § 1225(a)(3) "introduce[s] an appositive—a word or phrase that is synonymous with what precedes it ('Vienna or Wien,' 'Batman or the Caped Crusader')." [Doc. No. 9 at 20]. The Government argues the use of an appositive with "applicant for admission" and "otherwise seeking admission" shows Congress treats the phrases as synonymous. *Id.*

The R. & R. did not address this language in § 1225(a)(3), nor does Petitioner. The R. & R. instead examined § 1225(b)(2)(A) to conclude that "[t]he plain meaning of the phrase 'seeking admission' requires that the applicant must be presently and actively seeking lawful entry" because "the present participle in § 1225(b)(2)(A) implies action—something that is currently occurring." [Doc. No. 11 at 14] (quoting *Caballero v. Baltazar*, No. 25-cv-03120-NYW, 2025 WL 2977650, at *6 (D. Colo. Oct. 22, 2025)). Although not made explicit, the R. & R.'s grammatical reasoning amounts to a

meaningful variant canon argument because a grammatical analysis of "seeking" assumes that the statute does not define the word like it does with the phrase "applicant for admission." The meaningful variant canon states "where [a] document has used one term in one place, and a materially different term in another, the presumption is that the different term denotes a different idea." *Southwest Airlines Co. v. Saxon*, 596 U.S. 450, 457–58 (2022) (alteration in original) (quoting Antonin Scalia & Bryan Garner, *Reading Law* 170 (2012)).

Other district courts have rejected the Government's "appositive" argument, stating that "the case cited by [the government] to suggest that the word 'or' 'introduce[s] an appositive' actually says that the opposite is generally true." *Romero v. Hyde*, 795 F. Supp. 3d 271, 284 n.31 (D. Mass. 2025); *see Rodriguez v. Bostock*, No. 3:25-cv-05240-TMC, 2025 WL 2782499, at *20 n.7 (W.D. Wash. Sept. 30, 2025) (same). Those cases quote the portion of *Woods* that explains the "ordinary use [of 'or'] is almost always disjunctive." 571 U.S. at 45.

And indeed, "or" is not *really* an appositive here. Section 1225(a)(3) does not indicate the phrases are truly synonymous, because "applicants for admission" is a noun phrase and "seeking admission" is a category applicable to applicants for admission as well as other aliens. Strictly speaking, a noun phrase and a category encompassing that noun phrase are not synonyms because the latter is broader than the former.

The better reading starts with the period-correct definitions of "otherwise," which are "[i]n a different manner; in another way, or in other ways." *Otherwise*, Black's Law

Dictionary (6th ed. 1990). Those definitions imply that the condition preceding "otherwise" shares a category with the condition following it.

Two examples show the impact of the word "otherwise" in "applicants for admission or otherwise seeking admission." 8 U.S.C. § 1225(a)(3). Consider an inventory list that includes the following two entries:

(1) "Animals that are housecats or otherwise canine."

(2) "Animals that are housecats or otherwise feline."

The first entry is absurd—no canines are housecats, or vice versa. But the second entry makes sense because the word "otherwise" creates a formal logical syllogism, and that syllogism is valid. Not all felines are housecats, but all housecats are feline. And critically, housecats are housecats in the first instance, involuntarily. Using the plain language definition of "otherwise" in the context of an involuntary legal status, the preceding noun must share the condition that follows.[7]

Now apply this logic from the start: Section 1225(a)(1) "deem[s]" "an alien present in the United States who has not been admitted . . . an applicant for admission." The statute doesn't describe what the alien is doing. It imposes a status by operation of law. Section 1225(a)(3) then says "[a]ll aliens . . . who are applicants for admission or otherwise seeking admission" shall be inspected. The word "otherwise" establishes that

---

[7] To object that § 1225(a)(3)'s syllogism is invalid is an objection to be heard by Congress, not the Court. Congress's determination that all "applicants for admission" are "seeking admission" is not facially absurd, and so the Court must take Congress at face value. To conclude otherwise creates a third category of aliens having undefined legal status—a result contrary to both the text and common sense.

"aliens . . . seeking admission" is the category to which "applicants for admission" belong. If "applicants for admission" are subject to inspection because they fall within the broader class of those "seeking admission," then the statute necessarily treats "seeking admission" as a condition that attaches to anyone deemed an "applicant for admission."

And because § 1225(a)(1) imposes that label on every "alien present in the United States who has not been admitted," the condition of "seeking admission" is likewise imposed. "Seeking" does not describe what the alien is voluntarily doing or the alien's mindset. The alien is "seeking admission" in the same way the alien is "an applicant for admission"—by congressional decree.

So, all "applicants for admission" are "seeking admission." The former is sufficient (but not necessary) for the latter, and the latter is necessary (but not sufficient) for the former. Congress used a straightforward logical syllogism. Stated another way, § 1225(a)(3) leaves open the possibility that some aliens who are not applicants for admission may nonetheless be "seeking admission." But it does *not* leave open the possibility that some "applicants for admission" are not "seeking admission."[8]

Other district courts that have grappled with § 1225(a)(3) have seemingly sidestepped the word "otherwise" by failing to appreciate the involuntary legal nature of being an "applicant for admission." For example, in *Romero v. Hyde*, the United States

---

[8] If the statute contained indicia of temporal or geographic limitation on the state of being an "applicant for admission," this might lend the structural inference that § 1225 pertains only to aliens inspected at or near the border, close in time to their entry. But as § 1225(a)(1) unambiguously encompasses both those "present" and "arriving," the Court must defer to the statute's plain language.

District Court for the District of Massachusetts used two example statutes to show why the Government's reading did "not follow from the text." 795 F. Supp. 3d at 284–85; *see also* [Doc. No. 1 ¶ 33] (citing *Romero v. Hyde*). The court in *Romero* compared § 1225(a)(3)'s inspection requirement to the following example statute: "[a]ll craftsmen (including union-members) who are carpenters or otherwise woodworking shall be inspected by safety compliance officers." *Id.* at 285. And as an analogue to removal provision of § 1225(b)(2)(A), the court formulated another example statute: "in the case of a craftsman who is a carpenter, if the examining safety compliance officer determines that a craftsman woodworking is not wearing his safety goggles, the craftsman shall pay a fine." *Id.*

The court in *Romero* wrote that "no reasonable person would understand the carpenter to be at risk of receiving a fine for not wearing his safety goggles *when not woodworking*." *Id.* (emphasis added). And so while "anyone seeking admission . . . 'shall be inspected'" under § 1225(a)(3), "the mandatory detention provision" of § 1225(b)(2)(A) "applies only if the . . . applicant . . . is 'seeking admission.'" *Id.* (citations omitted).

But the *Romero* court's reasoning fails because no law *deems* someone a "carpenter." An individual may choose whether to be a carpenter and whether to be "woodworking" at a given time. That contemplates a situation completely unlike that facing an applicant for admission.

Unlike the voluntary state of being a "carpenter," the law "deem[s]" an "alien present in the United States who has not been admitted" an "applicant for admission." 8

U.S.C. § 1225(a)(1). That means § 1225(a)(3)'s inspection requirement for "[a]ll aliens . . . who are applicants for admission or otherwise seeking admission" does not contemplate a voluntary action.

Moreover, the formal syllogistic relationship created in § 1225(a)(3) must apply to § 1225(b)(2)(A)'s use of the same phrases. Neither Petitioner nor the R. & R. provides a reason to "abandon [the] usual presumption that 'identical words used in different parts of the same statute' carry 'the same meaning.'" *Henson v. Santander Consumer USA, Inc.*, 582 U.S. 79, 85 (2017) (quoting *IBP, Inc. v. Alvarez*, 546 U.S. 21, 34 (2005)). And courts "do 'not lightly assume that Congress silently attaches different meanings to the same term in the same . . . statute[.]'" *U.S. Forest Serv. v. Cowpasture River Pres. Ass'n*, 590 U.S. 604, 614 (2020) (quoting *Azar v. Allina Health Servs.*, 587 U.S. 566, 574 (2019)). Because the statute itself creates a logical category relationship between "applicant for admission" and "alien . . . seeking admission," the Court has no occasion to apply the meaningful variant canon to § 1225(b)(2)(A)'s use of the phrases. Petitioner is seeking admission.

      b)  <u>Section 1225(a)(4) specifies the process for ceasing to be an applicant for admission.</u>

Even if § 1225(a)(3) did not create a formal syllogistic relationship between "applicant for admission" and "seeking admission," § 1225(a)(4) provides more reasons to read all "applicants for admission" as necessarily "seeking admission."

In the same subsection deeming an "alien present in the United States who has not been admitted" as an "applicant for admission," 8 U.S.C. § 1225(a)(1), the statute also

describes the circumstances under which an alien may withdraw his or her application, § 1225(a)(4). That provision, titled "Withdrawal of application for admission," states "[a]n alien applying for admission may . . . at any time, be permitted to withdraw the application for admission and depart immediately from the United States." *Id.*

A plain language reading of the phrase "*applicant* for admission" alongside the phrase "*application* for admission" lends the inference that the "application" to be "withdraw[n]" is that of the "applicant for admission." *Id.* (emphasis added). This in turn lends the straightforward inference that "applicants for admission" apply for admission until taking the actions prescribed under § 1225(a)(4).

Although neither the Petitioner nor the R. & R. addresses § 1225(a)(4), that provision implies that Petitioner and the R. & R. would read all "applicants for admission" as "applying" for admission yet not necessarily "seeking" admission. But this simply cannot be. What individual is "applying" for a given legal status without "seeking" such a status?

Even without the impact of § 1225(a)(3), the better reading would be to take the phrase "alien seeking admission" in the same way writers frequently use multiple descriptors for a single subject. Two hypothetical statutes illustrate this:

> (1) In the case of a felon in possession of a firearm, the arresting officer shall verify the criminal record of a felon in possession of a firearm within 24 hours of arrest.

> (2) In the case of a felon in possession of a firearm, the arresting officer shall verify the criminal record of a felon having a firearm within 24 hours of arrest.

The latter provision cannot rationally imply a category of felons who "possess" a firearm yet do not actively "have" the firearm on their person after the arrest. No one would argue that the officer's duty to check the felon's criminal record arises only if the felon *keeps* the gun on his person *after* the arrest. Such a reading would denigrate the express and plain purpose of the hypothetical statute to require verification of an arrestee's felonious history prior to being charged as a felon in possession. Everyone who "possesses" an object "has" that object. And everyone legally "applying" for admission is also legally "seeking" admission.

> c) Section 1225(b)(2)(A)'s sentence structure indicates reference, not modification.

The structure of § 1225(b)(2)(A)'s removal provision further suggests equivalent usage. The prefatory language, "in the case of an alien who is an applicant for admission," sets the scope of what follows. 8 U.S.C. § 1225(b)(2)(A). Had Congress meant to imply a category of applicants for admission who might not be seeking admission, the natural manner of doing so would read "in the case of an alien who is *both* an applicant for admission *and seeking admission*." Instead, the phrase "alien seeking admission" comes after the operative language, "if the examining immigration officer determines." *Id.* This structure indicates that "alien seeking admission" *refers* to the prior subject—it does not imply *modification* of the prior subject.

Moreover, any appearance of suboptimal drafting disappears with § 1225(a)(3)'s establishment of a categorical relationship between the phrases "applicants for

admission" and "aliens . . . seeking admission."[9] Section 1225(b)(2)(A) can use those phrases as categorically equivalent to one another because the statute itself explains how the phrases are categorically equivalent to one another. A statute's use of differing phrases does not mandate categorically *distinct* meanings where the phrases' categorical *equivalence* is explicitly established elsewhere within the same statute.[10] Stated another way, when the text shows that a variant is not meaningful, the meaningful variant canon has no application. *See Southwest Airlines*, 596 U.S. at 457–58 (applying the canon only where the term used is "materially different").

### 3.    Partial overlap with § 1226(c)(1)(E) does not override § 1225's unambiguous text.

Finally, statutory overlap in relation to 8 U.S.C. § 1226(c)(1) cannot overcome the evident meaning of § 1225. Still, the Court examines these arguments to explain why § 1225(b)(2)(A) does not render superfluous § 1226(c)(1)(A) and (c)(1)(D). The Court

---

[9] Even in the presence of inartful drafting, the fact remains that "[s]ometimes drafters *do* repeat themselves and *do* include words that add nothing of substance, either out of a flawed sense of style or to engage in the ill-conceived but lamentably common belt-and-suspenders approach." Antonin Scalia & Bryan Garner, *Reading Law* 176–77 (2012). And in such cases the surplusage canon ought not apply, lest "[a] clever interpreter could create unforeseen meanings or legal effects from this stylistic mannerism." *Id.* at 177. To create an undefined third immigration status based on a single instance of the phrase "alien seeking admission" (as a referent to a prefatory subject) would be precisely this kind of "unforeseen meaning[] or legal effect[]." *Id.*

[10] Alternatively, if not all applicants for admission are necessarily "seeking admission," Petitioner's (1) long-term residence in the United States, (2) his alleged common law marriage to a United States citizen, and (3) his United States citizen daughter suggest that Petitioner *is* seeking admission. [Doc. No. 1 ¶ 43; Doc. No. 9 at 19].

also explains why redundancy in § 1226(c)(1)(E) cannot contradict the unambiguous meaning of § 1225.

First, parts (A) and (D) of § 1226(c)(1) still operate when an alien is erroneously found admissible. This is because the statutes referenced in parts (A) and (D) of § 1226(c)(1) apply to "any alien." 8 U.S.C. § 1182(a)(2), (a)(3)(B). If an applicant for admission is erroneously admitted, he or she is no longer subject to § 1225. Such an alien may later be found to have been inadmissible in the first instance under parts (A) and (D) of § 1226(c)(1). To define or narrow the scope of a statute does not render it superfluous.

The Laken Riley Act's addition of part (E) to § 1226(c)(1) does create redundancy. The R. & R. highlighted that § 1226(c)(1)(E) "mandates detention for [aliens] who . . . are inadmissible under § 1182(a)(6)(A)," and that statute in turn "specifically refers to 'alien[s] present in the United States without being admitted or paroled.'" [Doc. No. 11 at 15–16] (citations omitted). Although § 1226(c)(1)(E) only imposes the no-bond provision if the unadmitted alien commits one of a list of specific crimes, the provision might "be superfluous if § 1225(b)(2) already authorized their mandatory detention." *Id.* at 16. After all, "an 'alien present in the United States' without admittance would be unlikely to prove that they are 'clearly and beyond a doubt entitled to be admitted'" within the meaning of § 1225(b)(2)(A). *Id.*

The Government also acknowledges that the "provisions have overlap much like a Venn diagram," but argues "they are not perfectly overlapping so as to make a provision superfluous." [Doc. No. 12 at 13]. The Government explains that § 1226(c)(1)(E) applies to *all* aliens who commit certain *crimes*, while § 1225(b)(2)(A) reaches *only* applicants

for admission *regardless* of criminal history. *Id.* at 12 ("[Section] 1226(c)(1)(E) mandates detention for a group of [aliens] that includes a narrow subset of applicants for admission that may also be subject to § 1225(b)(2)(A) detention."). The Government also argues that the provisions employ distinct enforcement mechanisms: "Section 1225(b)(2)(A) allows detention upon encountering an immigration agent and § 1226(c) provides for detention by the issuance of a warrant; two different routes to detention." *Id.* at 13 (emphasis removed); *cf. SAS Inst. Inc. v. Iancu*, 584 U.S. 357, 364 (2018) ("And just as Congress' choice of words is presumed to be deliberate and deserving of judicial respect, so too are its structural choices." (citation modified)). Lastly, the Government invokes *Barton v. Barr* for the proposition that even if some overlap exists, "[r]edundancy in one portion of a statute is not a license to rewrite or eviscerate another portion of the statute contrary to its text." [Doc. No. 12 at 13] (quoting *Barton v. Barr*, 590 U.S. 222, 239 (2020)).[11]

The R. & R. correctly noted redundancy, and while that may "supply a clue as to the better interpretation of the statute . . . [s]ometimes the better overall reading of the statute contains some redundancy." *Rimini St., Inc. v. Oracle USA, Inc.*, 586 U.S. 334, 346 (2019). Such is the case here. The strength of § 1225's unambiguous language denies the Court "license to . . . eviscerate" the word "present" from the statute's opening definition. *Barton*, 590 U.S. at 239; 8 U.S.C. § 1225(a)(1). Nor does the redundancy allow the Court to impute the term "arriving" to each subsection of § 1225.

---

[11] Petitioner does not respond to the Government's objections on this subject. *See generally* [Doc. No. 14] (lacking any reference to surplusage or 8 U.S.C. § 1226(c)(1)).

The recency of § 1226(c)(1)(E)'s passage does not mandate a contrary result. Certainly, a later congressional enactment can help resolve statutory ambiguity when it accords with original meaning. But the Supreme Court "ha[s] often observed . . . 'the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one.'" *South Dakota v. Yankton Sioux Tribe*, 522 U.S. 329, 355 (1998) (quoting *United States v. Phila. Nat'l Bank*, 374 U.S. 321, 348–49 (1963)). The Court's inquiry must still center on the meaning of § 1225(b)(2)(A) when it was passed in 1996, as "the whole point of having [a] written statute[]" is that it "ha[s] a single, best meaning[,] [and that] 'meaning is fixed at the time of enactment.'" *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024) (quoting *Wis. Cent. Ltd. v. United States*, 585 U.S. 274, 284 (2018) (emphasis omitted)).

And in 1997, the Executive promulgated a regulation stating that "[d]espite being applicants for admission, aliens who are present without having been admitted or paroled . . . will be eligible for bond and bond redetermination." *Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures*, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997); *see also* [Doc. No. 11 at 19] (reproducing the same quote, without the "despite being applicants for admission" portion). The initial decision to give bond hearings to applicants for admission explicitly reflected an exercise of agency discretion.[12] And the statutory

---

[12] The Court recites this regulation to recount the past actions of the Executive, not to suggest that the regulation controls the meaning of the statute. *Cf. SAS Inst. Inc. v. Iancu*, 584 U.S. 357, 363 (2018) ("Where a statute's language carries a plain meaning, the duty of an administrative agency is to follow its commands as written, not to supplant

propriety of denying bond hearings under § 1225(b)(2)(A) went without judicial inquiry until now for the simple reason that "the judicial power of federal courts is constitutionally restricted to cases and controversies." *Flast v. Cohen*, 392 U.S. 83, 94 (1968) (internal quotations omitted).

In sum, § 1225 unambiguously deems Petitioner an "applicant for admission" who is "seeking admission." Minor redundancy between § 1225(b)(2)(A) and § 1226(c)(1)(E) does not change that.

### C.    Petitioner fails to allege a due process violation.

Because the R. & R. recommended the Court grant the Petition on statutory grounds, it naturally declined to reach the merits of Petitioner's due process ground for relief. As the Court departs from the R. & R.'s statutory conclusion, it must now reach that ground.

On the due process claim, the Petition consists of four substantive sentences, including (1) one case quotation, (2) the unobjectionable statement that "being free from official restraint" is "a fundamental [liberty] interest," (3) a recitation of the Fifth Amendment, and (4) the conclusion that the Government's "detention of Petitioner without a bond redetermination hearing . . . violates his right to due process." [Doc. No. 1 ¶¶ 51–53]. The Government argues this level of pleading "is woefully insufficient to warrant consideration of relief." [Doc. No. 9 at 27].

---

those commands with others it may prefer.") (citing *Soc. Sec. Bd. v. Nierotko*, 327 U.S. 358, 369 (1946)).

The Court agrees that Petitioner's "[t]hreadbare recital[] of the elements of a cause of action, supported by mere conclusory statements" fails to satisfy his pleading standard. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (invoking pleadings standards in habeas context). But even if the Petition were not deficient in this manner, Petitioner's detention does not violate the Due Process Clause of the Fifth Amendment.[13]

Although the Petition does not invoke *Mathews v. Eldridge*, 424 U.S. 319 (1976), the Court addresses the framework to provide a complete analysis. *Mathews* requires balancing three factors: (1) the private interest impacted by the government action; (2) the risk that current procedures will cause an erroneous deprivation of that interest, and the probable value of additional procedural safeguards; and (3) the government's interest, including the administrative burdens that additional procedures would impose. *Id.* at 335. In his response to the Government's objections, Petitioner urges the Court to find merit in his due process claim, arguing (1) that the "Due Process Clause asks whether the government's deprivation of a person's life, liberty, or property is justified by a sufficient purpose"; (2) that "there is no question that the government has deprived Petitioner of his

---

[13] The Court notes that the extent of Petitioner's due process rights—those of an alien who is unadmitted yet present for years—is difficult to ascertain. The Supreme Court's recent decision in *Department of Homeland Security v. Thuraissigiam* declined to elaborate criteria beyond the phrase "established connections." 591 U.S. 103, 107 (2020). However, because the Court concludes no due process violation has occurred under any level of due process rights, the Court assumes for purposes of its analysis that Petitioner has "established" the requisite "connections" to obtain "due process rights in deportation proceedings." *Id.*; *see also* [Doc. No. 1 ¶¶ 43, 50] (incorporating Petitioner's earlier allegations that he has resided in the United States for twenty years, has family members who are United States citizens, and "is neither a flight risk nor a danger to society").

liberty"; and (3) that the Government "ha[s] not demonstrated that Petitioner needs to be detained." [Doc. No. 14 at 7–8].

### 1.    Petitioner's private liberty interests are less than that of a citizen.

In *Zadvydas v. Davis*, the Supreme Court acknowledged that aliens detained while awaiting removal retain a private liberty interest protected by due process. 533 U.S. 678, 693–95 (2001). Petitioner possesses a cognizable liberty interest in freedom from physical restraint. The Court does not minimize the significance of that interest. However, that interest is not absolute, and its weight in the constitutional calculus depends on context.

While Petitioner holds a liberty interest related to his pre-removal detention, the fact remains that "[i]n the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens." *Demore v. Kim*, 538 U.S. 510, 521 (2003) (quoting *Mathews v. Diaz*, 426 U.S. 67, 79–80 (1976)). And *Zadvydas* addressed a specific context: potentially *indefinite* detention following the completion of removal proceedings. 533 U.S. at 693. Under the constitutional avoidance canon, a majority of the Supreme Court in *Zadvydas* construed § 1231(a)(6) to contain an implicit temporal constraint, permitting detention only for the period "reasonably necessary to bring about that alien's removal," and further stating that a detention period of up to six months was presumptively constitutional. *Id.* at 689, 701.

The context of *Zadvydas* and the above rule from *Demore* establish that the due process rights at issue are, as the Seventh Circuit put it, the more limited "liberty in the United States by someone no longer entitled to remain" in the country. *Parra v.*

*Perryman*, 172 F.3d 954, 958 (7th Cir. 1999) (emphasis omitted); *accord Michael H. v. Gerald D.*, 491 U.S. 110, 127 n.6 (1989) ("We refer to the most specific level at which a relevant tradition protecting, or denying protection to, the asserted right can be identified.").

> **2.      *Risk of erroneous deprivation and the value of individualized bond hearings are not at issue where the duration of detention is defined.***

The second *Mathews* factor asks whether current procedures risk erroneous deprivation of Petitioner's liberty interest and whether additional safeguards would reduce that risk. 424 U.S. at 335. Petitioner's due process claim, however, does not allege that he has been erroneously classified as an applicant for admission or that the Government has misapplied the statutory framework to his individual circumstances. His removal proceedings are ongoing, and he retains the opportunity to contest removability and seek asylum relief. [Doc. No. 1 ¶¶ 42–46]. The question before the Court is not whether some individualized fact-finding was erroneous, but whether the statutory scheme itself—mandating detention during pending removal proceedings for applicants for admission—violates due process.

Two years after applying the avoidance canon in *Zadvydas*, the Supreme Court in *Demore* reversed a district court's grant of habeas on a due process claim from a permanent resident alien detained without bond pending removal. 538 U.S. at 514. The lower court had ruled that the Due Process Clause afforded the admitted alien an individualized bond hearing and that it mandated release absent a finding that the alien was dangerous or likely to flee. *Id.* at 514–15.

The Supreme Court in *Demore* held that criminal aliens in removal proceedings may be subject to mandatory detention without violating the Due Process Clause. *Id.* at 527–31. The Court reasoned that where the petitioners in *Zadvydas* had faced potentially endless detention, the petitioner in *Demore* faced a limited and "much shorter" potential period of detention. *Id.* at 528.

Later, the Court in *Jennings* repeated *Demore*'s reasoning in denying habeas relief to lawful resident aliens who brought due process challenges to their detention during the pendency of their removability appeals. *Jennings v. Rodriguez*, 583 U.S. 281, 289–91, 304 (2018). The lower courts in *Jennings* had held that a bond hearing entitlement was implied in the relevant immigration statutes to avoid the constitutional analysis. *Id.* at 291–92. The Supreme Court reversed, again distinguishing the *Zadvydas* unlimited-detention situation from those containing duration limits as in *Demore*, the latter of which did not implicate due process concerns. *Id.* at 298–301, 304.

Petitioner's circumstances align more with *Demore* and *Jennings* than with *Zadvydas*. Unlike the petitioners in *Zadvydas*, who faced indefinite detention after their removal proceedings had concluded, Petitioner's removal proceedings remain active—and his detention will terminate when those proceedings end. As the Supreme Court explained in *Jennings*, removal proceedings under 8 U.S.C. § 1225(b)(2)(A) "provide for detention for a specified period of time," terminating detention with the end of the proceedings. 583 U.S. at 299.

Petitioner has been detained for approximately 105 days, [Doc. No. 9 at 13],[14] a period well within the six-month period that *Zadvydas* deemed presumptively reasonable even in the more constitutionally fraught potentially-indefinite-detention context, 533 U.S. at 701. Petitioner cites no precedential authorities finding due process violations at this duration. The Court's own search of the relevant case law also reveals no such examples.

As for the value of individualized bond hearings, the value of such a safeguard declines when the purpose of detention is to prevent nonappearance during removal proceedings and Congress has made a categorical determination that a particular class of aliens poses a flight risk. *See Demore*, 538 U.S. at 519. To hold otherwise would substitute judicial guesswork for legislative decision making. And "when the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal." *Id.* at 528.

### 3. *The Government retains a strong interest in exercising its plenary power over immigration proceedings.*

The third *Mathews* factor examines the government's interest in continuing its current policy, including administrative burdens associated with a change in policy. 424 U.S. at 335. Petitioner does not address the question of administrative burdens, and while he argues that the Government "ha[s] not demonstrated that [he] needs to be detained," [Doc. No. 14 at 8], the fact remains that the Supreme Court has repeated for more than a

---

[14] The Petition itself states Petitioner's detention began in "early October 2025," [Doc. No. 1 ¶ 15], but for the purposes of this analysis, the Court uses the Government's longer stated length of detention, beginning on September 12, 2025.

century that "deportation proceedings 'would be vain if those accused could not be held in custody pending the inquiry into their true character.'" *Demore*, 538 U.S. at 523 (quoting *Wong Wing v. United States*, 163 U.S. 228, 235 (1896)). Congress used that power in 8 U.S.C. § 1225, determining that applicants for admission represent a per se flight risk and mandating their detention. And to whatever extent the Executive's implementation of this policy is or was discretionary, the Supreme Court in *Demore* reiterated that the Executive could do exactly that: "deny bail to the detainees 'by reference to the legislative scheme' even without any finding of flight risk." *Id.* at 524 (quoting *Carlson v. Landon*, 342 U.S. 524, 543 (1952)).

That the Executive did provide bond hearings in the past says nothing about administrative burdens associated with that practice. In the absence of Supreme Court or Tenth Circuit guidance indicating that the policies set forth by Congress and implemented by DHS are unconstitutional, Petitioner's claim that DHS's policy violates due process must fail.

IV.     **CONCLUSION**

For these reasons, the Court ACCEPTS IN PART and REJECTS IN PART the Report and Recommendation. The Court accepts the Report and Recommendation to the extent it finds the Court has jurisdiction over this matter and otherwise declines the remainder. The Court DENIES Montoya's Petition for Writ of Habeas Corpus.[15] A separate judgment will follow.

IT IS SO ORDERED this 26th day of December 2025.

_____
JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE

---

[15] The Tenth Circuit has stated that a certificate of appealability "is not required in order to appeal a final order in a proceeding under 28 U.S.C. § 2241." *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 810 n.1 (10th Cir. 1997) (citing *Bradshaw v. Story*, 86 F.3d 164, 165–66 (10th Cir. 1996)).